**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| AIMEE L. M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 23-CV-98-JFJ |
| | ) | |
| MARTIN J. O'MALLEY,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Aimee L. M. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## I.      General Legal Standards and Standard of Review

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an

---

[1] Effective December 20, 2023, pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment "must be established by objective medical evidence," such as medical signs and laboratory findings, "from an acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. § 416.921. *See* 20 C.F.R. §§ 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national

2

economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance "and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Procedural History and the ALJ's Decision

On January 13, 2017, Plaintiff, then a 47-year-old female, protectively applied for Title XVI supplemental security income benefits. R. 192-197. Plaintiff alleges she has been unable to work since an amended onset date of January 13, 2017, due to scoliosis, anxiety disorder, panic disorder, depression, hearing loss, high blood pressure, herniated disc, and post-traumatic stress disorder ("PTSD"). R. 35-36, 232. Plaintiff's claim for benefits was denied initially and on reconsideration. R. 118-121, 125-132. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a hearing on April 29, 2019. R. 32-57, 148-150. The ALJ issued a decision on June 21, 2019, denying benefits and finding Plaintiff not disabled. R. 11-20. The Appeals Council

denied review (R. 1-4), and Plaintiff appealed to the United States District Court for the Northern District of Oklahoma (R. 883-887).   On May 26, 2021, the Commissioner filed an unopposed motion to remand the case for further administrative proceedings.   ECF No. 20 in Case No. 20-CV-263-JED-JFJ.   On June 3, 2021, the court granted the motion, and the case was remanded back to the Commissioner.   R. 888-889.

On July 12, 2021, the Appeals Council assigned Plaintiff's case to a new ALJ, instructing the ALJ to (1) further evaluate Plaintiff's alleged symptoms in accordance with 20 C.F.R. § 416.929; (2) further consider Plaintiff's maximum RFC and provide appropriate rationale with specific references to the record; and, if needed, (3) obtain supplemental evidence from a vocational expert ("VE") to clarify the effect that Plaintiff's limitations have on her occupational base.   R. 890-893.   On remand, ALJ Laura Roberts conducted a telephonic hearing on December 1, 2021.   R. 825-857.   On April 25, 2022, the ALJ issued a decision denying benefits and finding Plaintiff not disabled because she could perform other work existing in the national economy. R. 804-817.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her application date of January 13, 2017.   R. 807.   At step two, the ALJ found that Plaintiff had the severe impairments of lumbar degenerative disc disease and annular tear, hypertension, bilateral cholesteatoma with hearing loss,[2] and substance use disorder.   *Id.*   The ALJ further found Plaintiff had the non-severe impairments of cervical spondylosis, right knee pain, anxiety, PTSD, and depression.   R. 807-808.   In assessing Plaintiff's mental impairments under the "paragraph B"

---

[2] A cholesteatoma is "an abnormal skin growth or skin cyst trapped behind the eardrum, or the bone behind the ear" that can cause ear infections, hearing loss, tinnitus, vertigo, and, in extreme cases, facial paralysis.   Am. Acad. of Otolaryngology, *Cholesteatoma*, ENT HEALTH, https://www.enthealth.org/conditions/cholesteatoma/ (last visited Mar. 11, 2024).

criteria, the ALJ found that Plaintiff had mild limitations in all four areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  R. 808.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  R. 809-810.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform "light work as defined in 20 C.F.R. § 416.967(b)" with the following limitations:

> She can perform no climbing of ropes, ladders, or scaffolds and can occasionally climb ramps or stairs; stoop; crouch; crawl; and kneel.  She can perform no balancing on uneven, moving, or narrow surfaces.  She can perform no work involving any exposure to unprotected heights or dangerous moving machinery. She will need to work in a noise level of three as defined by the Selected Characteristics of Occupations.[3]

R. 810-811.  At step four, the ALJ found Plaintiff had no past relevant work.  R. 815.  However, based on the testimony of a VE, the ALJ found at step five that Plaintiff could perform other occupations existing in significant numbers in the national economy, such as Cashier, Cleaner, and Assembler.  R. 815-816.  The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT").  R. 816.  Accordingly, the ALJ concluded Plaintiff was not disabled from the application date of January 13, 2017, through the date of the decision.  R. 817.

---

[3] The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") is the companion publication to the DOT.  *See* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("In making disability determinations, [the Social Security Administration] rel[ies] primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.").

### III.    Issues

Plaintiff raises three points of error in her challenge to the denial of benefits: (1) the ALJ failed to properly evaluate the medical opinions of record, (2) the ALJ failed to consider and account for all of Plaintiff's impairments and limitations in the RFC assessment, and (3) the ALJ's consistency analysis was flawed.  ECF No. 11.  The Court agrees with the second assignment of error and finds that the ALJ committed reversible error by failing to properly address the work-related limitations of Plaintiff's non-severe mental impairments in the RFC assessment.  The Court does not reach Plaintiff's other arguments.

### IV.    Analysis – The ALJ Committed Harmful Error by Failing to Account for Plaintiff's Non-Severe Impairments in Assessing the RFC

Plaintiff argues the ALJ committed reversible error, because she failed to consider the effects of Plaintiff's non-severe mental impairments in formulating the RFC.  ECF No. 11 at 10-11.  A claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week despite her impairments.  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  In assessing the RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis in original); *see also* 20 C.F.R. § 416.945(a)(2) ("We will consider all of [a claimant's] medically determinable impairments of which we are aware, including . . . impairments that are not 'severe'. . . when we asses [a claimant's] residual functional capacity.").  Additionally, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations.  SSR 96-8p, 1996 WL 374184, at *7.  In other words, the ALJ must explain the basis for the limitations included in the RFC assessment with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*

6

The ALJ's step-two assessment of limitations in the four broad areas of mental functioning, known as the "paragraph B" criteria, is not an RFC assessment. *Id.* at *4. Rather, such limitations are used to rate the severity of the claimant's mental impairments at step two and three of the sequential evaluation. *Id.* The RFC assessment, however, "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph[] B." *Id.* Thus, a finding at step-two that an impairment is non-severe "does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells*, 727 F.3d at 1068-69.

## A.      ALJ's Step Two Findings

At step two, the ALJ determined that Plaintiff's anxiety, depression, and PTSD were non-severe medically determinable impairments.  R. 808.  The ALJ then briefly summarized Plaintiff's hearing testimony and treatment record.  *Id.*  The ALJ noted Plaintiff's testimony that she gets nervous around crowds of people and takes anxiety medication that she thinks is helpful. *Id.* (citing R. 847).  The ALJ further noted that Plaintiff had no inpatient hospitalizations or emergency care related to mental health or psychiatric issues during the relevant period and had only been treated with psychotropic medication prescribed by her primary care provider. *Id.*  The ALJ then explained that the record examinations reflected that Plaintiff had a normal affect, was able to follow simple and multiple step commands, was fully oriented, exhibited normal or appropriate mood and affect, had normal attention span and concentration, and had normal behavior, thought, and perception. *Id.* (citing R. 307, 336, 609, 620, 680, 685, 1228, 1232, 1311, 1547).  The ALJ determined that Plaintiff's non-severe mental impairments caused mild limitations in the four paragraph B mental

functional areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; adapting or managing oneself, and interacting with others.  *Id.*[4]

## B.    ALJ's RFC Assessment

The ALJ did not mention or consider the effects of any of Plaintiff's non-severe mental impairments in her RFC analysis.  R. 811-815.  The ALJ's discussion, instead, was focused on the effect of Plaintiff's severe physical impairments, specifically her bilateral cholesteatoma with hearing loss and her lower back problems.  *Id.*  The ALJ mentioned Plaintiff's mental impairments twice in her RFC analysis, but only to discuss the non-severity of the impairments.  *See* R. 814 ("The reconsideration DDS psychological consultant determined the claimant has no severe mental medically determinable impairment ([R. 105-106]), and the undersigned gave that opinion significant weight as it is supported by the evidence of record . . . ."); R. 814-815 ("The psychological consultative examiner does not give a specific opinion but rather rates degrees of limitations in various areas. . . . However, the mild impairment rating is consistent with the record as a whole and supports a finding of nonsevere for mental health conditions.").

The ALJ never discussed what, if any, work-related limitations result from Plaintiff's non-severe anxiety, depression, and PTSD.  The omission of a discussion regarding the effects of these non-severe impairments demonstrates that the ALJ failed to provide a narrative discussion explaining the evidentiary basis and rationale for the RFC assessment, as required by SSR 96-8p.  Thus, because the ALJ "did not engage in any analysis of mental functions and how they may be

---

[4] The ALJ could have found at step two that Plaintiff's medically determinable impairments "posed *no* restriction" on the "paragraph B" functional areas, which would have "obviate[d] the need for further analysis."  *Wells*, 727 F.3d at 1065 n.3 (emphasis in original); *see also* 20 C.F.R. § 416.920a(c)(4) (allowing ALJ to find degree of limitation in "paragraph B" functional area to be "none").  However, like in *Wells*, the ALJ found "mild" restrictions in the "paragraph B" functional areas, "requiring further analysis" of Plaintiff's non-severe mental impairments.  727 F.3d at 1065 n.3.

impacted (or not) by [Plaintiff's] medically determinable mental impairments," the ALJ did not follow the "step-four analytical procedure prescribed by the regulations." *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013). Without a discussion of how Plaintiff's non-severe anxiety, depression, and PTSD were accounted for in the ALJ's RFC assessment, or an explanation as to why such impairments do not impose any limitations, the Court is unable to "credit [the ALJ's] conclusion with substantial evidence." *Wells*, 727 F.3d at 1071.

### C.    ALJ's Error was Harmful

The ALJ's failure to consider a claimant's non-severe impairments when assessing the RFC does not necessarily warrant remand if "the evidence in [the] case does not support assessing any functional limitations from mental impairments." *Alvey*, 536 F. App'x at 794; *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (explaining that a finding of harmless error is appropriate where the court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). For example, in *Alvey*, the Tenth Circuit found the ALJ's failure to analyze the impact of a claimant's non-severe mental impairments on the RFC was harmless error, where there was no evidence the claimant had been treated by a mental practitioner and no substantial evidence supporting any functional limitations. 536 F. App'x at 794-95.

Although it is a close question, the Court concludes that a reasonable factfinder could have imposed work-related mental limitations based on the record evidence. Plaintiff underwent medication management for depression and anxiety for a significant period. *See, e.g.,* R. 447, 616, 622-623, 1036-1037, 1542-1579. Specifically, the record reflects that throughout a portion of 2019 and 2020, Plaintiff was recommended to take up to one milligram of Klonopin up to three times a day due to her anxiety. R. 1564-1579. The record also includes a psychological consultative

9

examination performed by Dr. Alyssa Rippy.  R. 528-530.  Dr. Rippy diagnosed Plaintiff with specific trauma-related disorder and adjustment disorder with depressed and anxious mood, moderate.  R. 529.  Dr. Rippy opined that Plaintiff would "likely have mild difficulty" in attention and concentration, adapting to a workplace environment, and interacting with others, and that Plaintiff would experience "mild hypervigilance" from her trauma-related disorder.  R. 530.[5] Plaintiff also testified that large crowds of people make her nervous (R. 847), which the ALJ noted at step two but did not discuss when determining whether Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were consistent with the record evidence (R. 808, 811-812).  Considering the record as a whole, the Court finds that Plaintiff's significant mental health medication regime, combined with Dr. Rippy's findings, indicate that a reasonable factfinder could have included mental limitations in the RFC, such as limiting Plaintiff to occasional contact with others and few workplace changes.  Therefore, the Court finds the error was not harmless and requires reversal for further consideration and discussion.  *See Peggy L. P. v. Kijakazi*, No. 21-CV-306-JFJ, 2022 WL 15798576, at *5 (N.D. Okla. Oct. 28, 2022) (finding reversible error where ALJ failed to consider plaintiff's non-severe mental impairments in formulating RFC, where plaintiff was prescribed mental health medication and received individual counseling); *Stookey v. Colvin*, No. 13-2172, 2014 WL 3611666, at *4 (D. Kan. July 22, 2014) (finding reversible error where ALJ failed to consider plaintiff's non-severe mental impairments in formulating RFC, where plaintiff was prescribed mental health medication by treating physician).

---

[5] The ALJ stated she considered Dr. Rippy's consultative examination in her decision, but the ALJ did not discuss any of Dr. Rippy's findings.  R. 814-815.

In sum, the ALJ erred by relying on her non-severity finding at step two "as a substitute for a proper RFC analysis." *Wells*, 727 F.3d at 1065.  The error was harmful.  Accordingly, the matter will be remanded for further proceedings consistent with this Order. *See id.* at 1071 (remanding for further proceedings "concerning the effect of [claimant's] medically determinable mental impairments on her RFC, and for further analysis at steps four and five, including any further hearing the ALJ deems necessary").

V.   **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 28th day of March, 2024.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**